ALLIANCE TRACTOR & IMPLEMENT COMPANY, A CORPORA-
TION, DOING BUSINESS AS CROWN MANUFACTURING COM-
PANY, APPELLANT, v. LUKENS TOOL & DIE COMPANY, A
CORPORATION, APPELLEE.

233 N. W. 2d 299

Filed September 25, 1975. No. 39651.

Wright & Simmons, for appellant.

James R. Hancock, for appellee.

Heard before SPENCER, CLINTON, and BRODKEY, JJ., and
FLORY and WHITE, District Judges.

WHITE, District Judge.

This is an action for specific performance of a contract
to construct a machine to manufacture hay rake teeth.

At the close of the evidence the plaintiff moved to amend the petition to include a cause of action for breach of warranty. The defendant cross-petitioned, alleging that the contract was substantially performed and alternatively that the machine, subject of the contract, had been accepted by the plaintiff's failure to object, and that the machine had been so modified by the plaintiff and his agents as to waive further performance by the defendant. The defendant prayed for judgment for the balance of the contract price of $10,000 and for the fair and reasonable value of the services and materials expended above the contract price.

The plaintiff appeals to this court assigning error in three categories: (1) The court erred in finding that the contract had been substantially performed by defendant. (2) The court erred in finding that the plaintiff had waived a strict compliance with the contract by reason of the modifications admittedly made on the machine. (3) The court erred in finding and awarding damages to the defendant. We reverse and remand for a new trial.

On June 29, 1971, the plaintiff entered an agreement with the defendant for the defendant "to design, procure, tool and supervise" the installation of certain equipment in a building at the Alliance Airport.

"The equipment referred to herein shall be for the purpose of manufacturing rake teeth." "Lukens agrees to supervise the initial production of rake teeth produced by the equipment referred to herein to the extent that the rake teeth produced have the quality of tempering, uniformity and design of *not less* than the rake teeth currently being produced by International Harvester Company under Part No. 813000M."

" * * * the equipment * * * must render to users of the rake teeth *no less* degree of usability and performance than the rake teeth currently being produced by International Harvester Company under Part No. 813000M."

"The technology, manufacturing sequence and equipment provided for herein shall have capabilities to manufacture the rake teeth referred to herein at the average rate of 100 per hour during a period of 100 hours when operated by three well-trained and skilled men."

"Delivery and installation of the herein described equipment shall be on or before December 1, 1971."

"Lukens' estimate of the cost of the machines and services provided for herein is $21,000.00 to $25,000.00 using available new and used equipment. This estimate does not include electrical work, plumbing and labor costs at the Alliance Airport building."

The contract then provided for certain periodic payments and provided that after $12,000 was paid, the remainder was due and payable upon delivery of the machines.

The plaintiff paid the defendant $15,000 on the contract and acknowledges if the machine as delivered conformed to the specifications contained in the contract, it would be indebted to the defendant in the amount of $10,000.

The equipment was not delivered on the December 1, 1971, date, as provided in the contract, but was delivered on March 29, 1972.

It would serve no purpose to summarize the extended evidence as to the difficulties encountered by plaintiff and defendant in an attempt to make the machine operate in a satisfactory manner after the same was delivered to the plaintiff. Suffice to say that from a fair reading of the evidence, it must be determined that, as the plaintiff contends, the machine operated at its longest continuous period, a period of not to exceed 5 hours and never reached the production of 100 rake teeth per hour for 100 hours. The testimony conflicts very sharply as to the area of whether the teeth so produced during the limited periods of production ever complied with the terms specified in the

contract. However, all such teeth manufactured were in fact sold. The machine broke down repeatedly.

Essentially, the defendant contends:

(1) That the defendant substantially performed the contract.

(2) That buyer failing to reject the goods, accepted them.

(3) That plaintiff engaged one James Campbell, who so modified the machine that plaintiff waived any previous defects.

With reference to the defendant's first contention, the evidence indicated that the longest the equipment ever operated on any day without a major breakdown was from 8:30 a.m. to 1:15 p.m., or a period of somewhat less than 5 hours on a day when 580 teeth were produced. There is no evidence in the record from which the court could infer that the plaintiff waived compliance with that portion of the contract which required the defendant to construct a machine that would produce 100 rake teeth per hour for 100 hours. Evidence indicates the rake tooth manufactured did not conform in one specific area to the specifications. The most important appears to be that of the end bend. The International Harvester tooth had a sharp 90° bend and a straight end. The tooth manufactured by the machine produced by the defendant had a round bend which, according to the evidence of the principal purchaser of the teeth, would not fit as tightly into the clamp where they were attached to the rake frame.

Substantial performance is shown when the following circumstances are established by the evidence: (1) The party made an honest endeavor in good faith to perform his part of the contract. (2) The results of the endeavor are beneficial to the other party. (3) Such benefits are retained by the other party. If any one of the circumstances is not established, the performance is not substantial, and the party has no right

of recovery. The other party should receive at least approximately what he bargained for. Rickertsen v. Carskadon, 172 Neb. 46, 108 N. W. 2d 392. The plaintiff has a machine not yet operable, and of no benefit to him until it is so. We find no substantial performance.

The equipment when delivered to the plaintiff was not in operating order. The furnace would not perform properly and had to be reconstructed. The machine needed to be braced to prevent jam-ups. All of the efforts of the parties were directed in an attempt to make the machine operate. There is no suggestion in the record that the plaintiff at any time accepted the machine as manufactured or that he ever failed or neglected to attempt to improve the machine so that the same would operate up to the specifications in the contract. We find there was no waiver.

At the time, or shortly after, the machine was delivered to the plaintiff, and it continued to break down, one James Campbell was recommended to the plaintiff by the defendant Lukens to render advice, and to enable the plant to get into operation. The evidence disclosed that although Campbell was paid by the plaintiff, he consulted about 90 percent of the time with the defendant, and that the defendant knew what he was doing. The plaintiff's president admittedly was not a mechanical engineer and did not know how to make the hay rake tooth machine operate. Campbell was represented by the defendant as having experience in similar lines, and that he was capable of doing so. Campbell recommended a number of modifications of the machine in an attempt to make it operate. The defendant was informed of these modifications, and the plaintiff consented.

Defendant asserts that since Campbell was paid by the plaintiff he was the plaintiff's employee, and since the machine was modified by an employee of the plaintiff that Lukens was therefore excused from further

duty to perform his contract. With this we cannot agree. After recommending Campbell to the plaintiff as a person who would get the machine in operating order to perform his own contract, the defendant, Lukens, is not now in a position to claim that the modification suggested and executed by the man he recommended to the plaintiff relieved him from his own obligation to fulfill his contract.

The appellant asserts other errors which are not necessary to discuss since this matter will be retried.

REVERSED AND REMANDED FOR A NEW TRIAL.