## W. B. Martin & Son, Appellants, v. Mary Lamkin, Executrix, Appellee.

1. PRINCIPAL AND AGENT, § 5a*—*when contract creates relation.* A contract whereby a real estate agent is to have as his commissions all he obtains for the land above a fixed price creates the relation of principal and agent.

2. PRINCIPAL AND AGENT, § 11*—*when agency revocable.* Unless an agency is coupled with an interest the principal may revoke it at any time, being liable for the damages sustained, and this rule applies though the appointment is by its terms made irrevocable.

3. PRINCIPAL AND AGENT, § 12*—*when agency is not coupled with an interest.* An agents authority to sell land is not coupled with an interest in the land so as to be irrevocable by his principal where the interest of the agent could only arise out of the execution of the power and in the proceeds derived from the sale as a compensation for his services in its execution.

4. BROKERS, § 19*—*when authority to · sell real estate revoked by death of owner.* A contract between real estate agents and an owner of land whereby the agents were to have as commissions all they could obtain for the land above a fixed price, *held* not to create an authority to sell, coupled with an interest in the land, so that the agency would not be revoked by death of the owner.

Appeal from the Circuit Court of Saline county; the Hon. A. W. LEWIS, Judge, presiding. Heard in this court at the March term, 1914. Affirmed. Opinion filed July 28, 1914.

WHITLEY & COMBE, for appellants.

W. F. SCOTT, for appellee.

MR. JUSTICE MCBRIDE delivered the opinion of the court.

This was a suit brought by appellants against the appellee to recover commissions for the sale of real estate. At the conclusion of appellants' evidence the court directed a verdict for the appellee.

Fred Lamkin was the owner of one hundred and sixty acres of land in Saline county and on the

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

twentieth day of May, 1912, authorized appellants, who were engaged in the real estate business, to sell the land. A Mr. Gersbacher, at the solicitation of appellants, went to examine this land on about the first day of June, 1912, with a view of purchasing it. He did not see Mr. Lamkin upon this trip, or at any time, but the appellants priced the land to him at ninety dollars per acre. He did not purchase it but went to his home, in White county, without making a contract. On July 13, 1912, Fred Lamkin died testate and devised this real estate to his widow, and on July 16th the widow, as executrix caused notice to be served upon appellants directing them not to sell the land in question. On July 23, 1912, Gersbacher came back to see the appellants about purchasing this land and again went to look at it and claims to have made a contract with appellants at that time for the land. Appellants offered to show that after the death of Fred Lamkin and on about July 23, 1912, he made a contract with Gersbacher for sale of this land at the price of thirteen thousand five hundred dollars, being fifteen hundred dollars in excess of the price for which they had been authorized by Lamkin to sell the land. They also offered to show by Gersbacher that he was at that time ready, able and willing to have paid the full amount of the purchase price. This testimony was objected to and the objection sustained. The contract or appointment authorizing appellants to sell the land in question was as follows:

"I, Fred Lamkin, authorize and employ W. B. Martin & Son to sell the following described Real Estate, situated in the County of Saline and State of Illinois, to-wit: S E ¼ of S W ¼, and S W ¼ of S E ¼ of Section 35-8-6; also the east ½ of the N W ¼ excepting about 5 acres south and east of the N. Y. Central R. R., and about five acres north and west of the N. Y. Central R. R. in E ½ of S W ¼, all in Section 2-9-6 E. of 3rd P. M., for the sum of Twelve Thousand

Dollars, and upon the following terms, to-wit: Coal reserved with right to mine and remove same. Scales reserved. Terms as agreed, and I promise to pay said agents all over $12,000 commission on the amount of said Real Estate or any part thereof may bring when sold, and after the expiration of this contract if sale or trade is made to any party previously seen or influenced in any way by said agents I promise to pay said agents the same commission as above stated and will use all means in my power to assist in the sale of said property, but will not sell for a less price or on easier terms than above stated, and agree with said agent not to sell or otherwise dispose of the above described Real Estate without the written consent of said agents. If sale is made I agree to make a Warrantee Deed to whomever said agents may say, and furnish said purchaser an abstract of title to said land, showing a fee simple title in me.

This instrument to remain in full force until Sept. 1st, 1912, and thereafter until I give said agents written notice of withdrawal from sale.

Witness my hand and seal this 29th day of May, A. D. 1912.

(Signed)    F. Lamkin.    (Seal)"

The claim filed by appellants against the estate of Fred Lamkin is as follows:

"December 1, 1912.

Estate of Frederick Lamkin, Dr.

To W. B. Martin, Ray Martin and Guy Martin, partners doing business under the firm name and style of W. B. Martin & Sons.

For commissions on sale of land and securing purchaser for land, per terms of written contract, $1,-500.00."

By direction of the trial court a verdict was returned for appellee.

The real question involved in this case, as we view it, is: Did the appellants have the right to sell this

land under the appointment above noted, after the death of Fred Lamkin, and after the executrix had notified them not to sell? The case was tried by the appellee and determined by the lower court upon the theory that the death of Frederick Lamkin revoked the authority of appellants to sell the land and that any sale made by them after the death, and after the notice by the executrix not to sell, was without authority of law. It will be observed that, by the terms of this appointment, Frederick Lamkin agreed to pay appellants, as agents, a commission upon the sale of said land all over twelve thousand dollars for which they sold the land, and that the instrument was to remain in full force until September 1, 1912. As we understand the law, a contract whereby a real estate agent is to have as his commissions all he obtains for the land above a fixed price, creates the relation of principal and agent. *Burnett v. Potts,* 236 Ill. 499. If appellants were the agents of Lamkin to sell this land, then under the law the death of Lamkin revoked the agency, unless the authority to sell is coupled with an interest in the land. A. & E. Encyc. of Law, vol. 1, p. 1222. This is the general rule, and as we understand the decisions of the higher courts of this State they are to the effect that unless the agency is coupled with an interest the principal may revoke it at any time, being liable for any damages sustained. *Bonney v. Smith,* 17 Ill. 531. And this power of revocation may extend to appointments that are by their terms made irrevocable. *Walker v. Denison,* 86 Ill. 142.

It is insisted by counsel for appellants that the present case does not come within the rule above invoked for the reason that appellants' appointment was coupled with an interest and for a valuable consideration, and being so was irrevocable. We do not understand that there was any consideration given for this appointment or any specific obligation incurred by appellants by reason thereof. They were not by the

terms of the appointment bound to do anything, but it was left at their pleasure whether they would or would not sell the land. If they did make the sale then they were to get the commission. In order to determine whether or not this was a power coupled with an interest, it is necessary to ascertain what is meant by the courts, in the use of this term. In the case of *Bonney v. Smith,* supra, it is said: "A power, coupled with an interest, must create an interest in the thing itself upon which the power is to operate; the power and estate must be united, or be coexistent, and this class of powers survive the principal and may be executed in the name of the attorney  *  *  *. Another class of powers is where they are created upon a valuable consideration, and to operate as a transfer, mortgage or security to another, although the power can only be executed in the name of the principal  *  *  *. These are irrevocable by the act of the principal,  *  *  * and created to subserve purposes in which another has an interest. Another class is where the attorney has an interest only arising out of the execution of the power, as in the proceeds, as a compensation for the business of its execution. 8 Wheaton, 174; 2 Kent's Com. 644. This power is of the latter class, and revocable by the principal, although the principal might perhaps be liable to the agent or attorney for any damages sustained. It is a naked power, with an interest in the proceeds, based only upon its execution, which execution is dependent upon the continuing will of the principal." And in this opinion Mr. Story on agency is quoted at length confirming the doctrine announced. Again in the case of *Walker v. Denison,* 86 Ill. 146, it is said: "As to the exception of a power coupled with an interest, it is not enough, as appellant supposed, that the agent has an interest in the execution of the power. The meaning of that expression underwent discussion and was authoritatively determined in the case of *Hunt v. Rousmanier's Administrator,* 8

Wheat. 174, where it was held that 'a power coupled with an interest' is where the power or authority is coupled with an interest in the thing itself, actually vested in the agent; and that it was not an interest in that which is produced by the exercise of the power.'' Chief Justice Marshall in the decision of the case of *Hunt v. Rousmanier's Adm'r, supra,* in speaking of- the general rule says: ''That a power ceases with the life of the person giving it, admits of one exception. If a power be coupled with an 'interest,' which survives the person giving it, and may be executed after his death. As this proposition is laid down too positively in the books to be controverted, it becomes necessary to inquire what is meant by the expression, 'a power coupled with an interest?' Is it an interest in the subject on which the power is to be exercised, or is it an interest in that which is produced by the exercise of the power? We hold it to be clear, that the interest which can protect a power after the death of a person who creates it, must be an interest in the thing itself.'' Counsel for appellants have cited cases which seem to hold that under circumstances where the agent has a contract for a definite period of time, and has expended money procuring a purchaser, and at about the time the purchaser was procured and after the owner had been advised that the sale was about consummated, that such agency under such circumstances could not be revoked, and the agent defeated in the collection of his commission. We can readily see that the attempted revocation under such circumstances would be a fraud upon the rights of the agent, but an entirely different question arises in the present case. There could be no fraud, as the revocation was based upon the death of Lamkin, and we think the cases referred to by counsel for appellants have no application to the present case. We are of the opinion that the death of Frederick Lamkin revoked the agency of appellants and that their appointment was not

coupled with an interest in the land but their interest could only arise out of the execution of the power and in the proceeds as a compensation for their services in its execution, and that as the agency had been revoked by operation of law the contract of sale offered to be shown as having been made after the death of Lamkin was a nullity, and that as no sale had been made the commission claimed had not been earned under the terms of the contract, and that appellants are not entitled to recover the commissions claimed.

Again it is said by counsel for appellant that the appellants were entitled to compensation for the services that were actually performed by them under the appointment and before its revocation. This may be true, but if it is, no such question arose upon the record in this case. The claim made by appellants is not for compensation for the services rendered but is: "For commissions on sale of land and securing purchaser for land, per terms of written contract, $1,500.00."

There is no evidence offered, showing or tending to show the value of the services rendered, and, as we view it, there was only the one question presented to the trial court, and reviewable here, and that is, whether or not a sale was made and the appellants entitled to the commissions contracted for.

We are of the opinion that the court did not err in excluding the proffered testimony and in directing a verdict for the appellee, and the judgment of the lower court is affirmed.

*Judgment affirmed.*